UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LENA KOTLYAR, individually and on )
behalf of all others similarly situated, )
)
Plaintiff, ) No. 17 C 4729
)
v. ) Chief Judge Rubén Castillo
)
THE UNIVERSITY OF CHICAGO )
MEDICAL CENTER, )
)
Defendant. )

### MEMORANDUM OPINION AND ORDER

Lena Kotlyar ("Plaintiff"), on behalf of herself and two nationwide classes, brings this action under the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227, against the University of Chicago Medical Center ("Defendant") to stop its alleged practice of using unauthorized telephone calls through predictive dialers with pre-recorded or artificial voices to collect unpaid medical bills. (R. 11, Compl.) Defendant moves for a stay of the case pending a decision by the U.S. Court of Appeals for the D.C. Circuit in *ACA International v. FCC*, No. 15-1211 (D.C. Cir. argued Oct. 19, 2016), the outcome of which Defendant argues could affect several issues raised by the complaint. (R. 15, Mot. to Stay.) For the reasons stated below, the motion for a stay is granted.

### BACKGROUND

According to the complaint, Defendant is a major provider of healthcare services to patients within the greater Chicago metropolitan area and throughout the Midwest. (R. 11, Compl. ¶ 9.) Defendant provides these services on a "fee-for-service" basis, which allows patients to pay for healthcare services directly, through a third-party, or through some

combination of these methods. (*Id.* ¶ 10.) Defendant allegedly collects patient phone numbers at the time healthcare services are rendered, and, among other things, uses the phone numbers as part of an automated calling operation to collect on unpaid accounts. (*Id.* ¶ 11.) These automatic collection calls are placed through a predictive dialer which features pre-recorded or artificial voices. (*Id.*) Plaintiff claims that in an effort to reduce costs, Defendant allegedly fails to use adequate procedures to confirm that patient telephone numbers are accurate or current before placing these automated phone calls. (*Id.* ¶ 12.)

Plaintiff alleges that sometime around April 2017, Defendant called her cellular telephone in an attempt to collect an unpaid medical debt. (*Id.* ¶ 15.) Plaintiff claims that she is not a current or previous patient of Defendant and has had no other relationship with Defendant. (*Id.* ¶¶ 15-16.) Plaintiff claims that after the first call, she received additional misdirected calls over the ensuing weeks from Defendant on her cellular phone. (*Id.* ¶ 17.) Plaintiff claims that these calls were attempts by Defendant to collect an unpaid debt owed by a delinquent patient of Defendant, and that all calls featured a pre-recorded or artificial voice. (*Id.*) Plaintiff claims she repeatedly contacted Defendant's customer service department and notified them that her phone number was not associated with Defendant's delinquent patient. (*Id.* ¶ 18.) She further claims that she informed Defendant's representatives that Defendant did not have permission to call her number again. (*Id.*) Plaintiff claims that her complaints were ignored, and that Defendant continued to use automatic collection calls to call her cellular phone to collect a debt she did not owe. (*Id.*)

In May 2017, Plaintiff filed a complaint in the Circuit Court of Cook County, Illinois, on behalf of herself and two other similarly situated classes alleging violations of the TCPA. (R. 1-1, State Court Compl.) The case was removed to this Court by Defendant. (R. 1, Notice of

Removal.) Thereafter, the Court dismissed the complaint without prejudice to Plaintiff filing either a timely motion to remand or an amended federal complaint. (R. 9, Min. Entry.) In June 2017, Plaintiff filed an amended federal complaint. (R. 11, Compl.) As alleged in the amended complaint, Plaintiff's "Called Party Class" claim alleges that in the four years prior to this suit, all persons within the class received at least one telephone call from Defendant on their cellular phone which featured a pre-recorded or artificial voice, and that the called party was not the same individual who provided the telephone number to Defendant. (*Id.* ¶ 20(i).) Plaintiff's "Revocation Class" claim alleges that within the four years prior to this suit, all persons in the class received at least one telephone call on their cellular phones from Defendant featuring pre-recorded or artificial voices that Defendant did not have consent to make. (*Id.*)

Defendant now moves for a stay pending a decision in *ACA*. (R. 16, Mem. at 1.) *ACA* arose from a ruling issued by the Federal Communications Commission ("FCC") addressing numerous issues under the TCPA, including the regulation of calls placed to reassigned numbers, revocation of consent, and the use of predictive dialers.[1] *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C.R. 7961 (July 10, 2015). The D.C. Circuit heard arguments on October 19, 2016, in a consolidated case filed by nine companies, including lead petitioner ACA International, who sought judicial review of the FCC's ruling pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 500-504. *See Burnett v. Ocwen Loan Servicing, LLC*, No. 17 C 3474, 2017 WL 5171226, at *1 (N.D. Ill. Nov. 8, 2017) (explaining procedural history of *ACA*). To date, no opinion has been issued. *See id.* Defendant

---

[1] The FCC has "authority to prescribe regulations to implement the TCPA." *Blow v. Bijora, Inc.*, 855 F.3d 793, 798 (7th Cir. 2017) (quoting 47 U.S.C. § 227(b)(2) (internal quotation marks omitted)). Under the Administrative Procedures Act, also known as the "Hobbs Act," FCC orders interpreting the TCPA are binding on lower federal courts and are subject to review only in the U.S. Courts of Appeals. *See CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 447-48 (7th Cir. 2010); *Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780, 787 (N.D. Ill. 2016), *aff'd on other grounds*, 855 F.3d 793 (7th Cir. 2017). Thus, the FCC ruling at issue in *ACA* would be binding on this Court unless modified or vacated by the D.C. Circuit.

3

argues that the claims raised in this case could be impacted by a decision in *ACA*, and that a stay of the case is therefore appropriate. (R. 16, Mem. at 1-5.) Plaintiff objects to the request for a stay and argues that a ruling in *ACA* will have no impact on this case. (R. 26, Opp'n at 2.)

## LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Texas Indep. Producers & Royalty Owners Ass'n v. E.P.A.*, 410 F.3d 964, 980 (7th Cir. 2005) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)). The party requesting a stay "bears the burden of establishing its need." *Ankcorn v. Kohl's Corp.*, No. 15-1303, 2017 WL 395707, at *2 (N.D. Ill. Jan. 30, 2017) (citation omitted). "The parties and issues in two suits need not be identical for a court to stay proceedings in one suit pending a decision in another." *Leung v. XPA Logistics, Inc.*, No. 13-3877, 2015 WL 12826472, at *1 (N.D. Ill. Aug. 12, 2015). Courts generally consider three factors in deciding whether to stay a case: (1) whether there would be undue prejudice or tactical disadvantage to the non-moving party, (2) whether a stay would simplify the issues in question, and (3) whether a stay would reduce the burden of litigation on the parties and the court. *See Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009); *Leung*, 2015 WL 12826471, at *1.

## ANALYSIS

Applying the above factors, the Court concludes that a stay is warranted. A stay will not cause undue prejudice or disadvantage to the Plaintiff. Additionally, a stay will potentially simplify or resolve certain issues raised by Plaintiff's complaint, which in turn could reduce the burden of litigation on the parties and the Court.

I.  **Undue Prejudice to the Non-Moving Party**

Defendant argues that a stay in this case would not result in any undue prejudice to Plaintiff because *ACA* was fully briefed and argued on October 19, 2016, and therefore a decision in *ACA* should be imminent. (R. 16, Mot. at 10.) In Plaintiff's view, however, a stay of this case "could be extremely lengthy, if not effectively indefinite, such that Plaintiff would be prejudiced." (R. 26, Opp'n at 8.)

The Court concludes that a stay of this case would not result in any undue prejudice to Plaintiff. This case is still in the very preliminary stages, and other than the amended complaint being filed, no significant action has yet been undertaken by either party. As Defendant points out, the *ACA* case was fully briefed and argued more than a year ago. It seems highly likely that a decision is imminent. *See Amodeo v. Grubhub, Inc.*, No. 17-CV-01284, 2017 WL 5166647, at *4 (N.D. Ill. Aug. 11, 2017) (finding that a stay based on *ACA* would not unduly prejudice the plaintiff because "[t]his case is in an early stage of litigation, and the delay caused by the stay will likely be insubstantial giv[en] that briefing and oral argument have already been completed in the D.C. Circuit" (internal citation and quotation marks omitted)). Plaintiff is incorrect in her argument that granting a stay would "necessarily require" this Court to extend the stay pending further appeals in *ACA*. (R. 26, Opp'n at 8.) This might be an issue for a later stage, but it is not a basis to deny the request for a stay in the first place. *See Amodeo*, 2017 WL 5166647, at *4 (rejecting as premature plaintiff's argument that "even after the D.C. Circuit Court rules, the parties might then appeal the case to the Supreme Court" as "speculative and unpersuasive as a reason to reject a stay"); *see also In re Groupon Derivative Litig.*, 882 F. Supp. 2d 1043, 1052 (N.D. Ill. 2012) ("As with any stay ruling . . . the court should remain flexible and open to revisiting the situation as events develop.").

5

Plaintiff also argues that whenever a stay would unduly prejudice the non-moving party, *Landis* requires the party seeking a stay to demonstrate a clear case of hardship or inequity if the case were to go forward. (R. 26, Opp'n at 10.) Defendant responds that this is not a formal requirement for obtaining a stay. (R. 27, Reply at 8.) As Defendant points out, several recent opinions from this District have granted a stay based on *ACA* without requiring a clear showing of hardship by the moving party. *See, e.g., Ankcorn*, 2017 WL 395707, at *4; *Abdallah v. Fedex Corp.*, 16-cv-03967, 2017 WL 3669040, at *1-2 (N.D. Ill. Mar. 20, 2017).

But as explained above, this Court is not convinced that granting Defendant's motion to stay would cause undue prejudice or harm to Plaintiff. Therefore, even accepting Plaintiff's argument, Defendant would not be required to make a clear showing of hardship. However, even if this Court were to require Defendant to make a showing of hardship, the Court finds that Defendant has met that burden. Plaintiff has propounded a substantial amount of discovery on Defendant, including voluminous document requests. (R. 27-1, Pl.'s Disc. Reqs.) Requiring Defendant to submit to voluminous, potentially unnecessary discovery would be inequitable and a waste of time and resources. The Court therefore finds that the first factor weighs in favor of granting a stay.

## II.  Simplification of the Issues

Defendant next argues that a decision in *ACA* could significantly impact the issues raised in this case. (R. 27, Reply at 6.) Specifically, Defendant argues that the following three issues presented in this case are likely to be impacted by the decision in *ACA*: (1) the use of automatic dialing services ("ATDS"), (2) the "one-call rule"; and (3) the revocation of consent issue. (*Id.* at 6-7.) Conversely, Plaintiff argues that the outcome of *ACA* will have no impact on this case. (R. 26, Opp'n at 5.)

6

## A. ATDS

Defendant argues that this case clearly implicates the FCC's ruling on ATDS. (R. 27, Reply at 6.) Plaintiff argues that her claims arise under the provisions of the TCPA regulating artificial or prerecorded voice messages, and not under the ATDS provision being challenged in *ACA*. (R. 26, Opp'n at 7.) Plaintiff argues that this provision prohibits unauthorized calls using a prerecorded or artificial voice, regardless of whether they are made using an ATDS, a predictive dialer, or some other calling technology, and therefore the decision in *ACA* will have no impact on the claims raised in this case. (*Id.*)

Upon review, the Court agrees with Defendant. As Defendant points out, ATDS is mentioned several times in Plaintiff's discovery requests: Among the 14 interrogatories are 3 that inquire directly about an ATDS; among the 58 document requests there are 15 that inquire directly about an ATDS; and among the 16 requests to admit are 2 that inquire directly about an ATDS. (R. 27-1, Pl.'s Disc. Reqs.) Plaintiff's argument that the ATDS issue is irrelevant to this case completely ignores her own discovery requests. Additionally, the court in *ACA* is reviewing the FCC's definition of an ATDS and considering when a predictive dialer can be deemed an ATDS. (*See* R. 16-3, *ACA* Joint Br. at 41-53, 100.) In Plaintiff's complaint, she alleges that Defendant places "automated collection calls through a predictive dialer," and that Defendant's failure to maintain adequate procedures to ensure that the numbers being called by the dialer are accurate resulted in several unwanted calls to her cell phone (R. 11, Compl. ¶¶ 11, 12.) A ruling by the *ACA* court on the ATDS issue could impact the resolution of these allegations.

## B. One-Call Rule

Defendant next argues that the one-call rule, at issue in this case, is also being addressed in *ACA*. (R. 27, Reply at 7.) Defendant points out that the joint brief filed by the petitioners in

7

*ACA* dedicates several pages to that rule. (*Id.*; *see also* 16-3, *ACA* Joint Br. at 70-75.) Defendant further argues that if the D.C. Circuit strikes down the one-call rule it would be dispositive of the claims raised by the Called Party Class. (R. 27, Reply at 7.) Plaintiff argues that *ACA* does not implicate the one-call rule, and instead only challenges the FCC's definition of a "called party." (R. 26, Opp'n at 5.)

Upon review, it is apparent that the one-call rule is at issue in *ACA* and is also relevant to this case. In *ACA*, the D.C. Circuit is considering whether the term "called party" under the TCPA includes only the "expected recipient" of the telephone call. (R. 16-3, *ACA* Joint Br. at 59-65.) The D.C. Circuit is also considering whether an exemption for unintentionally calling the wrong person is limited to the first call or extends to additional calls. (*Id.* at 70-75.) These issues are clearly relevant to this case, where Plaintiff's "Called Party Class" is comprised of called parties who received *one or more telephone calls* and were not the *intended recipient* of the calls. (R. 1-1, Compl. ¶ 20(i).) The D.C. Circuit's ruling on whether exemptions for unintentionally calling the wrong person extends to multiple calls, and/or whether the term "called party" refers only to the intended recipient of the telephone call, could be dispositive of the claims of the "Called Party Class" in this case. This weighs in favor of granting a stay until *ACA* is decided. *See Ankcorn*, 2017 WL 395707, at *2, 4 (granting a stay because the D.C. Circuit's ruling in *ACA* on the one-call rule could substantially impact the case); *see also Fontes v. Time Warner Cable Inc.*, No. CV14-2060-CAS(CWX), 2015 WL 9272790, at *4-5 (C.D. Cal. Dec. 17, 2015) (granting a stay pending a decision in *ACA* in part because the definition of "called party" and the exemptions associated with the one-call rule were potentially dispositive of the issues raised in the case).

C.  **Revocation of Consent**

Defendant also argues that if the D.C. Circuit limits the ways in which consent can be revoked by the recipient of a call, then the manner in which Plaintiff allegedly revoked her consent may not be sufficient. (R. 27, Reply at 7.) In other words, a ruling in *ACA* could again impact Defendant's liability in this case. (*Id.*) Plaintiff disagrees, arguing that she clearly revoked consent in this case and therefore *ACA* will have no effect on the outcome of this case. (R. 26, Opp'n at 6.)

The Court concludes that the outcome of *ACA* could have a substantial impact on this case. The "Revocation Class," as defined by Plaintiff, comprises a group of people who allegedly revoked their consent to receive calls from the Defendant. (R. 1-1, Compl. ¶ 20(ii).) The D.C. Circuit's analysis of what constitutes sufficient revocation of consent under the TCPA would provide guidance to this Court and promote consistency among the courts on this issue. *See Ankcorn*, 2017 WL 395707, at *2 (granting a motion to stay because a stay would "promote judicial efficiency and support a uniform, nationwide interpretation of these TCPA issues," including the revocation of consent issue.). The Court finds that this factor weighs in favor of granting a stay.

III.  **Reducing the Burden of Litigation**

As explained above, a decision in *ACA* has the clear potential to alter the scope of this litigation. A ruling in *ACA* regarding ATDS, the one-call rule, and/or revocation of consent could narrow Plaintiff's claims, reduce the amount of discovery that is necessary, or even completely dispose of certain issues. This weighs in favor of granting a stay. *See Burnett*, 2017 WL 5171226, at *2 ("The D.C. Circuit may indeed vacate the FCC's Declaratory Ruling, which would transform the elements that must be proven under the TCPA, in effect clarifying the legal

9

issues involved in pretrial motions and shaping the focus of discovery."); *Ankcorn*, 2017 WL 395707, at *2 (granting a stay and concluding that the D.C. Circuit's ruling in *ACA* could reduce the need for or change the scope of discovery); *Fontes*, 2015 WL 9272790, at *5 (granting a stay and concluding that a decision in *ACA* could be dispositive of certain issues in the case). The Court therefore joins the many other courts throughout the country that have found it appropriate to stay a TCPA case pending the D.C. Circuit's decision in *ACA*.[2] *See Ankcorn*, 2017 WL 395707, at *3 (collecting cases).

## CONCLUSION

For these reasons, Defendant's motion for a stay (R. 15) is GRANTED. This case is STAYED pending further order. Defendant is ORDERED to notify the Court in writing within 14 days of a ruling by the D.C. Circuit in *ACA International v. FCC*, No. 15-1211.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: November 30, 2017**

---

[2] Defendant also argues that a stay is warranted under the "doctrine of primary jurisdiction," which allows "a federal court to refer a matter beyond the conventional experience of judges or falling within the realm of administrative discretion to an administrative agency with more specialized experience, expertise, and insight." *In re StarNet, Inc.*, 355 F.3d 634, 639 (7th Cir. 2004) (citation and internal quotation marks omitted); *see also United States ex rel. Sheet Metal Workers Int'l Ass'n, Local Union 20 v. Horning Investments, LLC*, 828 F.3d 587, 592 (7th Cir. 2016) ("'Primary jurisdiction' is a permissive doctrine that applies when resolving a claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body. In such cases, a federal court may stay the proceeding to allow the agency to take the first look at the case." (internal citation and quotation marks omitted)). The doctrine does not appear to fit with the facts of this case, and it is unclear why this Court would "refer" any matter raised in the complaint to the FCC given that the FCC has already issued a ruling on these issues. But it is unnecessary to consider the matter further because the Court finds a stay warranted for the reasons outlined above.

10